*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

SCOTT RICHARD SZYMANSKI,

Defendant-Appellant.

UNPUBLISHED
January 22, 2026
12:14 PM

No. 370909
Oakland Circuit Court
LC No. 2022-280599-FC

Before: GADOLA, C.J., and REDFORD and RICK, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(2)(b) (victim under 13, defendant 17 years of age or older). Defendant was sentenced to concurrent terms of 30 to 75 years' imprisonment for each conviction. We affirm defendant's convictions, but vacate and remand for resentencing.

## I. FACTUAL BACKGROUND

This case arises from defendant's alleged sexual abuse of BM. Defendant was a friend of BM's father. The two were coworkers. They became close friends in 2007, after discovering a shared interest in a card game called Magic the Gathering. Defendant began visiting BM's home regularly to play the game with her father. Eventually, defendant began coming over to play almost every weekend and would often stay the night. During these visits, defendant became familiar with BM's mother and her two younger siblings. The friendship apparently ended when defendant allegedly crawled into bed with BM's mother and put his arm around her. BM's father confronted defendant about this incident and stopped speaking to him for over a year. They eventually resumed limited communication, though their relationship remained complicated.

On New Year's Eve 2020, BM had a panic attack while at a friend's house. She was approximately 17 or 18 years old at the time. BM's mother received a call about BM and went to bring her home. It was then that BM disclosed allegations involving defendant assaulting her in 2007. This was the first time her parents became aware of any inappropriate conduct between defendant and BM. BM's mother testified at trial that BM began having panic attacks in 2013, when she was approximately 13 years old. In 2018, BM started cutting herself and became

-1-

suicidal, requiring outpatient treatment. These mental health issues continued, with BM displaying additional suicidal tendencies as recently as 2022. Prior to the New Year's Eve 2020 disclosure, BM's parents were unaware of what was causing these issues.

After BM's parents learned of the abuse, they reported it to the Madison Heights Police Department. Defendant was later charged with two counts of CSC-I. At a pretrial hearing, the prosecutor placed a plea offer on the record, under which defendant would agree to plead guilty to two counts of second-degree criminal sexual conduct, MCL 750.520c. In exchange, defendant would be sentenced to 8 to 15 years' imprisonment, along with lifetime sex offender registration and electronic monitoring. Defendant stated that he would not accept the plea agreement because he was innocent. The trial court asked defendant if he understood the plea agreement and defendant stated that he did. Relevant to this appeal, defense counsel pointed out that if defendant went to trial, he would be facing a 25-year mandatory minimum sentence for both charges of CSC-I. The trial court confirmed that this was the case and stated that, if defendant was convicted, it would "most certainly go along with that."

Defendant's jury trial was held in March 2024. BM testified that when she was approximately five to seven years old, defendant would come into her bedroom at night and put his fingers inside her genital area. BM stated that at the time, she slept on the top bunk of a bunk bed, with her younger sister sleeping on the bottom bunk. Defendant would climb a small ladder to the top bunk to get to BM's bed. BM also stated that, on another occasion, defendant stayed the night and slept on the living room couch. BM went to the living room to lay with defendant because she had a bad dream. BM explained that she sought defendant for comfort because she "considered him as another dad." Defendant put his hand down her pants and placed his finger "between the lips" of her vagina. BM stated that she did not understand that she had been abused until high school, when she learned in a health class that such touching was inappropriate. She first told a friend about the abuse in 2020, then had a breakdown on New Year's Eve 2020, after which she disclosed the abuse to her parents.

Following the close of testimony, the jury found defendant guilty of both counts of CSC-I. Defendant was sentenced as earlier described. This appeal followed.

## II. ANALYSIS

## A. PROSECUTORIAL MISCONDUCT[1]

Defendant first argues that the prosecutor committed misconduct during closing argument by stating that BM had no motive to lie. He additionally argues that defense counsel was ineffective for failing to object to the prosecutor's statement. We disagree.

---

[1] "[A]lthough the term 'prosecutorial misconduct' has become a term of art often used to describe any error committed by the prosecution, claims of inadvertent error by the prosecution are better and more fairly presented as claims of 'prosecutorial error,' with only the most extreme cases rising to the level of 'prosecutorial misconduct.' " *People v Jackson (On Reconsideration)*, 313 Mich App 409, 425 n 4; 884 NW2d 297 (2015) (quotation marks and citation omitted).

Defense counsel did not object to the prosecutor's statements during closing argument. The issue is unpreserved. See *People v Evans*, 335 Mich App 76, 88; 966 NW2d 402 (2020) (quotation marks and citation omitted) ("In cases alleging prosecutorial misconduct, issues are preserved by contemporaneous objections and requests for curative instructions[.]"). Unpreserved claims of prosecutorial error are reviewed for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*.

Defendant preserved his claim of ineffective assistance of counsel by filing a motion for a new trial in the trial court and raising a claim of ineffective assistance. The trial court denied the motion. Our review of the issue is therefore limited to errors apparent on the record. *People v Unger*, 278 Mich App 210, 253; 749 NW2d 272 (2008).

"The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). "Claims of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *People v Isrow*, 339 Mich App 522, 529; 984 NW2d 528 (2021) (quotation marks and citation omitted). "A prosecutor may not vouch for the credibility of a witness by conveying to the jury that he has some special knowledge that the witness is testifying truthfully. The prosecutor may, however, argue from the facts that a witness is worthy of belief." *People v Clark*, 330 Mich App 392, 434; 948 NW2d 604 (2019) (citation omitted). Prosecutors are given wide latitude regarding their arguments and conduct. *People v Cooper*, 309 Mich App 74, 90; 867 NW2d 452 (2015). This latitude extends to arguing the credibility of witnesses and the guilt of the defendant. *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004).

Here, defendant takes issue with the following portions of the prosecutor's closing argument, in which he stated:

> So, I ask you if you think about all those things, what's her motive to put herself through this? What's her motive to keep reliving this? Retraumatizing herself? Revictimizing herself over and over and over again? To a friend, to the police, to CARE House, to me, to testifying the first time, to testifying the second time, to testifying here in front of all you strangers. What's her motive after 16 years now to put herself through that other than her trying to tell you what happened to her? What would be her motive? What do you think she gets out of this?

> \* \* \*

> And I would suggest to you, Ladies and Gentlemen, and what the evidence shows is there is no motive to do this. There's no evidence to suggest that for lack of a better phrase she's just a glutton for punishment. There's no evidence to suggest that—that, you know, she has some desire just to talk about this with people.

\* \* \*

She doesn't have a motive here. She's not getting anything from this except to finally have a say. And to go through the trauma of having to relive this moment over and over again.

\* \* \*

And I would suggest to you again there's no motive for her to come and talk to you guys about this other than a motive to finally have that voice. And I think her words alone prove guilt beyond a reasonable doubt but when you couple it with all the other things, it absolutely shows guilt beyond a reasonable doubt for the Defendant and I would ask you to find him guilty beyond a reasonable doubt.

Defendant contends that by focusing on BM's lack of motive to lie, the prosecutor improperly shifted the burden of proof onto the defense. We reject that notion. BM testified that defendant assaulted her in 2007. There was no other evidence available at defendant's 2023 trial aside from witness testimony. Thus, this case rested entirely on the credibility of the witnesses. "[A] prosecutor may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *Thomas*, 260 Mich App at 455. Further, it bears noting that defense counsel sought to impeach BM's credibility on cross-examination in an attempt to prove to the jury that she was being untruthful about her allegations against defendant. "[A]ttacking the credibility of a theory advanced by a defendant does not shift the burden of proof." *People v McGhee*, 268 Mich App 600, 635; 709 NW2d 595 (2005). The record thus does not support defendant's claim of prosecutorial misconduct.

Defendant additionally argues that defense counsel was ineffective for failing to object to the prosecutor's statements. He also contends that, during closing argument, defense counsel essentially apologized for failing to explain BM's motive to lie. In context, defense counsel stated as follows:

So, I don't know the issues and I wish I could tell you why [BM] is making these allegations. But what I'm here to tell you is what my job is that the Prosecution hasn't proven their case.

And let's talk about the reasonable doubts in this case and let's talk about what the law is. In terms of reasonable doubts, if any of you have one, you have an obligation and a duty to find [defendant] not guilty.

\* \* \*

The judge is not going to instruct you that in order to acquit [defendant], you have to find that [BM] had a motive to lie. She's not gonna [sic] tell you that. What she is going to tell you and the instructions and the law she's going to give you is that before you vote guilty, you have to find beyond a reasonable doubt that the Prosecution has proven their case.

Defense counsel then went on to challenge BM's allegations against defendant by reciting facts from her testimony that suggested she was being untruthful, including the plausibility of her testimony that defendant assaulted her while her younger sibling was asleep in the same room and the years-long delay in reporting the alleged assaults to the police.

"Whether a defendant has received ineffective assistance of counsel is a mixed question of fact and constitutional law." *People v Yeager*, 511 Mich 478, 487; 999 NW2d 490 (2023) (citation omitted). "In order to obtain a new trial because of ineffective assistance of counsel, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that that outcome would have been different." *Id*. at 488 (quotation marks and citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quotation marks and citations omitted). Effective assistance of counsel is presumed, and defendant bears the burden of overcoming the presumption that counsel's performance constituted sound trial strategy. *People v Loew*, 340 Mich App 100, 120; 985 NW2d 255 (2022).

Regarding defendant's argument that defense counsel was ineffective for failing to object to the prosecutor's closing argument, we again reiterate that the prosecutor did not commit misconduct by commenting on BM's motive to lie. Thus, defense counsel had no reason to object. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Defendant cannot establish the factual predicate for his claim. *Yeager*, 511 Mich at 487.

Defendant likewise cannot establish that defense counsel was ineffective for stating that he did not know why BM would lie. In responding to the prosecutor's statements, defense counsel primarily focused on clarifying that the burden of proof rested on the prosecutor and that the evidence showed the prosecutor had not established defendant's guilt. Defense counsel's decision to remind the jury of the proper legal standard constituted a valid strategic approach. *Loew*, 340 Mich App at 120. Thus, defense counsel was not ineffective for making statements regarding BM's motive to lie.

Even assuming arguendo that defense counsel's performance was deficient, defendant cannot establish the requisite prejudice. *Id*. The jury received proper instruction on the burden of proof, which mitigated any potential confusion from the prosecutor's comments. See *People v Zitka*, 335 Mich App 324, 348; 966 NW2d 786 (2020) (quotation marks and citations omitted) ("Jurors are presumed to follow their instructions, and jury instructions are presumed to cure most errors."). Additionally, the prosecutor presented ample evidence establishing defendant's guilt. It is unlikely that the jury would have returned a more favorable verdict had defense counsel objected to the prosecutor's closing argument or responded differently to the prosecutor's contention that BM had no motive to lie. *Yeager*, 511 Mich at 487. Defendant is not entitled to relief on this basis.

## B. DUE PROCESS

Defendant next argues that he was denied due process because he relied on the trial court's statement that it would "certainly" sentence him to the mandatory minimum of 25 years'

imprisonment, only to have the court sentence him to a minimum of 30 years' imprisonment instead. We disagree.

Generally, to preserve a claim of constitutional error predicated on the constitutional right to due process, the issue must be raised in the trial court. *People v Anderson*, 341 Mich App 272, 279; 989 NW2d 832 (2022). Defendant raised this argument for the first time in his motion for a new trial. We thus conclude that the matter was not preserved for review. *People v Davis*, 509 Mich 52, 64-65; 983 NW2d 325 (2022). Our review is limited to plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763.

As earlier noted, the trial court stated during a pretrial hearing that it would "most certainly go along with" sentencing defendant to the 25-year mandatory minimum for both counts of CSC-I, were he to be convicted. Defendant contends that the trial court essentially created a situation similar to a *Cobbs* plea agreement and that he relied on the court's statement to his detriment. He reasons that the court's failure to honor its statement regarding the 25-year mandatory minimum violated his right to due process.

Under *People v Cobbs*, 443 Mich 276, 283; 505 NW2d 208 (1993), judicial participation in sentencing discussions is strictly limited to circumstances where a party requests that the judge "state on the record the length of sentence that, on the basis of the information then available to the judge, appears to be appropriate for the charged offense." (Emphasis omitted). The *Cobbs* framework specifically prohibits judges from initiating or participating in discussions regarding sentences to be imposed, in order to avoid creating a "coercive atmosphere." *Id*. at 282. Here, the trial court did not provide a formal *Cobbs* evaluation, nor did it make any binding sentencing commitment. The court's statement was merely an acknowledgment of the statutory mandatory minimum. It additionally qualified its statement by stating, "I don't know what will happen[,]" and noted that any sentence was conditioned on defendant's conviction. The trial court's qualified statement, prefaced with uncertainty about what would happen at trial and made in the context of acknowledging a statutory minimum, cannot reasonably be interpreted as a binding sentencing commitment. Moreover, defendants are presumed to understand that proceeding to trial may result in harsher sentences than those available through plea negotiations. See *Brown*, 294 Mich App at 389 ("[I]t is not per se unconstitutional for a defendant to receive a higher sentence following a jury trial than he would have received had he pleaded guilty.").

Additionally, defendant's attempt to extend *Cobbs* plea agreement principles to his post-trial sentencing lacks legal support. *Cobbs* specifically addresses plea negotiations and the protection of defendants from coercive judicial participation in plea bargaining. *Cobbs*, 443 Mich at 283. Here, defendant explicitly rejected the plea offer and proceeded to trial. The *Cobbs* framework is therefore inapplicable to this case. *Id*. The protections afforded under *Cobbs* are designed for the plea context and cannot be extended to create binding sentencing commitments for defendants who choose to exercise their right to trial. Defendant cannot establish that his due process rights were violated in this instance.

## C. SENTENCING

Defendant also argues that he is entitled to resentencing because the trial court did not explain its rationale for sentencing defendant to a 30-year minimum sentence, where the statutory

mandatory minimum was 25 years. The prosecution agrees that defendant is entitled to resentencing. We agree as well.

"A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). Whether the sentence imposed by the trial court was reasonable is reviewed for an abuse of discretion. *People v Steanhouse*, 500 Mich 453, 476; 902 NW2d 327 (2017). "[A] sentence is unreasonable if the trial court failed to follow the principle of proportionality or failed to provide adequate reasons for the extent of the departure from the sentencing guidelines." *People v Sherrill*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 360133); slip op at 9.

Trial courts may "depart from the guidelines when, in their judgment, the recommended range under the guidelines is disproportionate, in either direction, to the seriousness of the crime." *People v Walden*, 319 Mich App 344, 352; 901 NW2d 142 (2017) (quotation marks and citation omitted). In doing so, the court must consider a number of factors, including:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*Sherrill*, ___ Mich App at ___; slip op at 9 (quotation marks and citation omitted).]

In making its sentencing decision, the trial court must state its rationale on the record in order to facilitate proper appellate review. *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017). The court must "include[] an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been[.]" *Id*. (quotation marks and citation omitted).

Defendant's minimum sentencing guidelines range was calculated at 108 to 180 months, which translates to 9 to 15 years. As noted, CSC-I carries a statutory mandatory minimum sentence of 25 years' imprisonment. MCL 750.520b(2)(b). At sentencing, the trial court gave the following rationale for imposing a 30-year minimum sentence:

> The guideline range here is 108 to 180; however, this is a mandatory minimum of 25 years. It is the sentence of the Court that Defendant serve 30 years to 75 years in the Michigan Department of Justice (sic). He will receive 277 days' [sic] of credit.
>
> The Court's uncertain as to whether or not there is required deviation to deviate [sic] above these guidelines being that there's a mandatory minimum of 25 years. But as this Court has already stated on the record, certainly the Michigan sentencing guidelines do not take into consideration the life of pain that has been, uh, attributed to [BM]. Of years of psychological abuse. Although there is a—a small portion in the guidelines that score for psychological trauma, they certainly cannot score for the trauma that [BM] herself has endured. Therefore, the Court

-7-

does believe it's appropriate, if this is considered to be a deviation, to deviate above the guidelines.

Here, the trial court imposed a sentence five years beyond the statutory minimum without providing any explanation for why the legislatively-mandated 25-year term was insufficient. The court's reasoning addressed only why the guidelines range of 108 to 180 months was inadequate, stating that the guidelines did not adequately account for the psychological harm to BM. However, this explanation provides no basis for concluding that the statutory minimum of 25 years was similarly deficient. The trial court's failure to explain its departure from the statutory mandatory minimum violated the principle of proportionality. *Sherrill*, ___ Mich App at ___; slip op at 9. Resentencing is required.

We affirm defendant's convictions, but vacate the sentence originally imposed and remand for resentencing. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ James Robert Redford
/s/ Michelle M. Rick